Filed 9/14/20  In re S.B. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re S.B., a Person Coming Under the Juvenile Court Law. | B302933 <br><br> (Los Angeles County  Super. Ct. No. 19CCJP05954A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> TITUS H., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Sabina A. Helton, Judge.  Affirmed.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant Titus H.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

_____

Titus H., the presumed father of now-one-year-old S.B., appeals the jurisdiction finding and disposition order declaring S.B. a dependent child of the juvenile court, removing S.B. from Titus's custody and ordering monitored visitation, counseling and drug testing for Titus. On appeal Titus argues the court's jurisdiction finding he had engaged in domestic violence was not supported by substantial evidence. He also contends the court abused its discretion by failing to terminate dependency jurisdiction at the conclusion of the combined jurisdiction/disposition hearing. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Initial and Amended Dependency Petitions*

On September 12, 2019 the Los Angeles County Department of Children and Family Services (Department) filed a petition pursuant to Welfare and Institutions Code section 300, subdivisions (a) (serious physical harm) and (b) (failure to protect)[1] on behalf of S.B. alleging Titus and S.B.'s mother, Ariyel B., had engaged in a violent altercation during which Titus choked Ariyel, pulled her hair and bit her arm.

An amended petition filed October 24, 2019 added an allegation Titus had a history of abusing, and was a current abuser of, marijuana, which put S.B. at substantial risk of serious physical harm.

_____

[1]     Statutory references are to this code.

## 2. *The Jurisdiction/Disposition Report*

S.B. was born five weeks premature in May 2019 with a congenital heart defect that the doctors indicated would require three surgeries over five years to correct. The first surgery was performed when S.B. was eight days old, and he remained in the hospital until he was three months old.

On July 14, 2019, while Titus and Ariyel were visiting S.B. in the hospital, Ariyel became upset with Titus because he smelled like marijuana. Titus then got angry over a picture of another man Ariyel had posted to her social media account. According to Ariyel's statements to hospital personnel immediately after the incident and to a Department social worker a few days later, Titus grabbed her by the neck, choked her and pulled her hair. When Ariyel picked up her phone to call the police, Titus took the phone from her. Ariyel attempted to get the phone back; Titus bit her on the forearm, leaving bite marks. A nurse entered the room; and Ariyel asked for help getting her phone from Titus, who immediately left the hospital. The nurses assisted Ariyel in contacting the police, and she was given an emergency protective order. Ariyel told the social worker the assault was an isolated incident and nothing similar had happened previously. She did not seek a permanent restraining order because she did not feel threatened by Titus.

In an interview with the social worker in October 2019, Ariyel recanted her allegations of assault. She said she had been reaching for her phone and Titus blocked her. Ariyel stated it was a "small argument"; "we just had a tassel [*sic*]." She claimed Titus had not pulled her hair or bitten her. The bite marks on her arm, she explained, were from an earlier fight with someone else. Ariyel said Titus "never . . . put his hands on me like that."

However, she also said she no longer wanted to be in a relationship with Titus because he had "crossed" her by causing a scene and involving the Department.

Ariyel and S.B. were living with Ariyel's mother until construction on Ariyel's house was finished. The social worker observed S.B. was doing well, Ariyel was attentive to his needs and mother and child appeared to be bonding. The social worker noted Ariyel's mother was very protective of Ariyel and S.B.

Despite multiple attempts the Department was not able to interview Titus until mid-October 2019. At that time Titus denied any physical violence had occurred at the hospital. He said he had been looking at Ariyel's phone and she got upset. He left immediately after the argument because he was surprised at her reaction and he did not want to cause a scene. Titus admitted he smoked marijuana twice a day for "breathing issues." But he maintained he did not smoke around S.B. and knew he was not supposed to be under the influence of marijuana when he visited the baby. Titus told the social worker he hoped to reconcile with Ariyel.

Although the Department expressed concern Ariyel had recanted her allegations and was minimizing her situation, it nonetheless recommended S.B. be placed in her care under the supervision of the Department. The Department recommended S.B. be removed from Titus's custody. The Department believed Titus did not understand the severity of the situation. He had not been forthcoming about the argument with Ariyel, and he had not attempted to contact the Department for three months after the incident despite being made aware of the Department's involvement much earlier. The Department was also concerned about Titus's marijuana use. Although he indicated he was

willing to submit to drug testing, Titus had twice failed to show for testing. He had also failed to provide any documentation supporting his claim of medical necessity for his marijuana use. The Department posited, if Titus had high levels of marijuana in his system, he might not be able to appropriately respond if S.B. had a medical emergency while in his care. In addition, Titus had not had any visits with S.B. for three months because S.B.'s health condition prevented him from being brought to the Department's offices and Titus's proposed monitor had not made an appointment for fingerprinting.

### 3. *The Combined Jurisdiction/Disposition Hearing*

The jurisdiction/disposition hearing was held on December 2, 2019. Ariyel and Titus requested the court dismiss the allegations of domestic violence because they were based on an isolated incident and did not rise to the level of court intervention. S.B.'s counsel stated her primary concern was Titus's marijuana use given the baby's fragile medical condition. The Department requested the petition be sustained as alleged, citing the parents' minimization of the domestic violence allegations and Titus's failure to cooperate with the Department's investigation.

The juvenile court dismissed the section 300, subdivision (a) count but sustained the subdivision (b) counts. As to domestic violence, the court found Ariyel's statements made closer in time to the incident were more reliable than her later denials.

Proceeding to disposition Ariyel requested the juvenile court grant sole legal and physical custody to her with monitored visitation for Titus and close the case. She argued she had provided a safe home to S.B. in the five months since the case had

5

been opened and had prevented him from having any unauthorized contact with Titus. Titus joined in Ariyel's request.

The juvenile court declined to terminate its jurisdiction and placed S.B. with Ariyel under the supervision of the Department. Titus was ordered to participate in individual counseling and to submit to drug testing. Titus was permitted three hours per week of monitored visitation.

Titus filed a timely notice of appeal on December 9, 2019. Ariyel is not a party to this appeal.

## DISCUSSION

1. *Titus's Challenge to the Juvenile Court's Jurisdiction Finding Is Not Justiciable*

Titus argues the juvenile court's jurisdiction finding S.B. was at serious risk of physical harm due to domestic violence between Titus and Ariyel was not supported by substantial evidence because the violent altercation was a one-time incident and there was no risk of future exposure to domestic violence. Titus does not challenge the court's finding he is a current abuser of marijuana, was under the influence of marijuana in S.B.'s presence, and his substance abuse places S.B. at risk of serious physical harm. Those findings provide a sufficient and independent basis for affirming dependency jurisdiction over S.B. regardless of any error in the finding as to domestic violence. (See *In re M.R.* (2017) 7 Cal.App.5th 886, 896 ["'[a]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate'"]; see also *In re Briana V.* (2015) 236 Cal.App.4th 297, 309 ["we need not address jurisdictional findings involving one parent where there are unchallenged findings involving the other parent"]; *In re I.A.* (2011)

6

201 Cal.App.4th 1484, 1490 ["[a]n important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status"].) As a result, even if we struck the jurisdiction finding as to the domestic violence, the juvenile court would still be empowered to order all reasonable services necessary to protect S.B., including services addressing conduct not alleged in the petition or sustained by the court. (See *In re Briana V.*, at p. 311; see generally § 362, subd. (a).)

In his reply brief Titus urges us to consider his appeal on the merits, arguing the finding he engaged in domestic violence could have an adverse impact in any future dependency proceedings. In limited circumstances reviewing courts have exercised their discretion to consider a dependency appeal challenging a jurisdiction finding despite the existence of independent and unchallenged grounds for jurisdiction when the jurisdiction findings "could be prejudicial to the appellant or could impact the current or any future dependency proceedings" or "the finding could have consequences for the appellant beyond jurisdiction." (*In re J.C.* (2014) 233 Cal.App.4th 1, 4; see *In re D.P.* (2015) 237 Cal.App.4th 911, 917; *In re Drake M.* (2012) 211 Cal.App.4th 754, 763.)

Titus has failed to identify any specific prejudice or adverse consequence that could possibly flow from the jurisdiction findings in this case. Any future dependency proceeding would have to be based on conditions existing at that time. A past jurisdiction finding would have limited, if any, relevance and does not create a high risk of prejudice. (See *In re I.A.*, *supra*, 201 Cal.App.4th at p. 1495.) Because Titus has not established any actual or threatened prejudice from the unchallenged

7

jurisdiction finding regarding domestic violence, his challenge to jurisdiction based on that finding does not raise a justiciable controversy for our consideration. (*In re Briana V., supra*, 236 Cal.App.4th at pp. 309-310; *In re J.C., supra*, 233 Cal.App.4th at p. 4; *In re I.A.*, at p. 1492.)

2. *The Juvenile Court Did Not Abuse Its Discretion by Continuing Its Jurisdiction at the Disposition Hearing*

Titus contends the juvenile court erred by failing to terminate dependency jurisdiction over S.B. at the conclusion of the disposition hearing. Rather than place S.B. in Ariyel's custody with court supervision, Titus argues, the court should have terminated jurisdiction with an order granting sole physical custody of S.B. to Ariyel and allowing Titus to have monitored visitation.

Once the juvenile court finds a basis to assume jurisdiction over a child, "the court is then required to hear evidence on the question of the proper disposition for the child." (*In re Destiny D.* (2017) 15 Cal.App.5th 197, 205.) "Typically, once the child has been adjudged to be a dependent child pursuant to section 360, subdivision (d), the juvenile court determines what services the child and family need to be reunited and free from court supervision." (*Ibid.*) However, at the disposition hearing the court is not required to continue dependency jurisdiction over the child and order the parents to participate in services. Instead, the court "retains the discretion in an appropriate case to terminate its jurisdiction at the close of a disposition hearing when it finds services and continued court supervision are not necessary to protect the child." (*Id.* at p. 208.) But termination of jurisdiction at the disposition hearing should not be the norm. "To the contrary, it will be an unusual case when protections

8

imposed at disposition will be sufficient to permit the conclusion that termination is appropriate."  (*Id*. at p. 211 ["[j]urisdiction should not be terminated unless the court concludes services and ongoing supervision are not necessary to protect the child"].)

We review the juvenile court's decision whether to terminate jurisdiction at the disposition hearing for abuse of discretion.  (See *In re Destiny D.*, *supra*, 15 Cal.App.5th at p. 213; see also *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300-301.)

Here, the court acted well within its discretion in determining that continued jurisdiction over S.B. was necessary.  It is true Ariyel had maintained a safe home for S.B. since the domestic violence incident.  However, S.B. was not discharged from the hospital after his birth and subsequent surgery until August 2019, less than four months before the disposition hearing.  Ariyel had indicated her living situation with her mother was temporary; and it would be reasonable to infer that some of her stability derived from residing with her mother, who the Department noted was very protective of Ariyel and S.B.  Further, in the five months since the domestic violence incident, Ariyel had failed to gain insight into the behavior that caused Department involvement in the first place; in fact, she had denied there had been any domestic violence.  Finally, S.B. is not only an infant requiring constant care, but also has a serious medical condition requiring numerous medical appointments and major surgeries.  Given these circumstances, the court acted well within its discretion in determining the family needed continued supervision.

## DISPOSITION

The jurisdiction findings and disposition orders are affirmed.

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.